[No. 7101–7–I.   Division One.   June 23, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. CHARLES
J. FAGUNDES, *Appellant.*

*Cody & Hatch, George Cody, French & Meagher,* and *Charles French,* for appellant.

*Russ Juckett, Prosecuting Attorney,* and *James B. Roche, Deputy,* for respondent.

JAMES, J.—Defendant, Charles J. Fagundes, a 17 1/2–year–old juvenile, was convicted at Superior Court trial of first–degree felony murder, first–degree rape, first–degree kidnaping, first–degree theft, and taking of a motor vehicle. We affirm his conviction but modify the judgment and sentence.

On July 5, 1978, the victim's daughter reported her disappearance. A search of her home revealed that several items of personal property were missing. The clothing she had worn at a family party on July 4 was uncharacteristically strewn around the living room of her home. The door of the safe in her home was ripped from its hinges. The next day, her bloodstained automobile was discovered not far from her residence. On July 11, the victim's naked body was discovered on a logging road outside of Marysville.

On July 5, 1978, homicide detectives from the Snohomish County Sheriff's Office began investigating the crime, focusing on a number of suspects, including Fagundes, who lived next door to the victim. At the same time, Marysville police were investigating Fagundes for theft and forgery. In May 1978, a number of items had been taken from a camper–pickup truck parked near Fagundes' home. The property stolen included a number of blank bank checks. After the theft, Fagundes was involved in cashing some of the stolen checks in the Marysville area. On July 14, 1978, police obtained a warrant to search Fagundes' residence for contraband from the theft and forgery case.

The search of the residence did, in fact, yield numerous items from the theft. In addition, while executing the search warrant, officers discovered some items reported missing from the murder victim's residence. At that point, the officers ceased the search and applied for a second warrant authorizing a search for evidence connecting Fagundes with the murder. While the police were searching, they advised Fagundes of his constitutional rights several times and, with his mother present, he indicated that he understood his rights and was talking to the police voluntarily.

Upon being confronted with the fact that much of the property from the murder victim's residence was found in his home, Fagundes offered an explanation as to how he obtained the items. The officers immediately checked his story and informed him that no one corroborated his explanation. The officers then told Fagundes that due to

the type of crime and the manner of its commission, the perpetrator probably had a psychological problem. They promised him they would recommend he be psychologically evaluated. Sometime after this promise, Fagundes confessed to the rape and murder.

The pathologist who conducted the autopsy took samples from the victim's vaginal area, including some pubic hair. He examined the samples and was able to identify a single sperm head. His chemical analysis also indicated the presence of acid phosphatase, an enzyme found in seminal fluid. Based on those two findings, the pathologist testified, "I believe beyond a reasonable doubt that there was seminal fluid in that vaginal tract at the time I did the autopsy."

Ms. Chesterene Cwiklik, an employee at the state crime lab specializing in trace evidence, examined the pubic hair samples. She testified that under microscopic analysis, the pubic hairs were covered with a gelatinous–appearing substance. Her chemical analysis positively indicated the presence of acid phosphatase. Ms. Cwiklik's methodology was based on a chemical reaction between the acid phosphatase and a known reagent which yields, depending on the amount of acid phosphatase present, a spectrum of purple colors. She testified that the methodology used is accepted in the field of criminal chemical investigation. She testified that in her opinion the high level of acid phosphatase, coupled with the gelatinous material coating the pubic hairs, indicated the presence of seminal fluid.

Fagundes first contends that the State's failure to file a *written* motion requesting his transfer for adult criminal prosecution violated the provisions of the Juvenile Justice Act of 1977, RCW 13.40, and, consequently, deprived the Superior Court of jurisdiction to try him as an adult. We do not agree.

RCW 13.40.110 provides in pertinent part:

Unless waived by the court, the parties, and their counsel, a decline hearing *shall* be held where:

(a) The respondent is sixteen or seventeen years of age and the information alleges a class A felony or an attempt to commit a class A felony; . . .

(Italics ours.) Because of Fagundes' age and because he was charged with class A felonies, a hearing on the question of declining jurisdiction was mandatory unless waived by *all* parties. *See* Patrick & Jensen, *Changes in Rights and Procedures in Juvenile Offense Proceedings,* 14 Gonz. L. Rev. 313, 321-22 (1979).

JuCR 8.1 provides for declination hearings "[i]f required or requested pursuant to RCW 13.40.110, . . ." JuCR 11.2(c) provides for notice of a declination hearing as follows: "Notice may be given by any means reasonably certain of notifying the party, including, but not limited to, mail, personal service, telephone, and telegraph." Fagundes has not contested the State's assertion that when he and his attorney appeared before the juvenile court on July 19, 1978, they were orally notified that a declination hearing would be held on August 1, 1978. A written motion for a decline hearing was not a prerequisite to superior court jurisdiction over Fagundes.

Fagundes also points out that the adult Superior Court file in this case does not contain the juvenile court's findings of fact, conclusions of law and declination order. He argues that the State's failure to file this record in the adult file deprived the court of jurisdiction to try him as an adult. The record, however, was filed in Snohomish County Superior Court's Juvenile Division. Fagundes does not argue that the declination hearing itself was substantively defective in any way. The filing of the findings and order in juvenile court is sufficient to satisfy both the statutory requisites, *see* RCW 13.40.110(3), and the constitutional requirements. *See Kent v. United States,* 383 U.S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045 (1966). We find no error.

Fagundes next contends that the search of his residence violated the Fourth Amendment because the affidavit supporting the warrant failed to establish probable cause for the search. Although he concedes the affidavit would be

sufficient for the issuance of an arrest warrant, he argues it fails to establish a nexus between the contraband and the place to be searched.

The determination by a magistrate that probable cause exists should be given great weight by the reviewing court. *State v. Johnson*, 17 Wn. App. 153, 561 P.2d 701 (1977). Sufficiency is determined by whether the affidavit provides the issuing magistrate with a factual basis from which he could independently conclude that probable cause existed. *State v. Withers*, 8 Wn. App. 123, 504 P.2d 1151 (1972). Direct proof of the location of the items to be seized is not required. An affidavit is sufficient if a commonsense interpretation results "in the inference of probable cause to believe that criminal objects are located in a particular place to which they have not been tied by direct evidence." *United States v. Valenzuela*, 596 F.2d 824, 828 (9th Cir. 1979). We conclude the showing made to the magistrate supports a reasonable belief that the stolen property in fact was located at Fagundes' residence and had not been disposed of by the date the warrant was issued.

Fagundes also contends that the evidence should have been suppressed because the affidavit contains intentional or reckless misrepresentations of material facts. *State v. Goodlow*, 11 Wn. App. 533, 523 P.2d 1204 (1974). Before exclusion is required, a defendant making a sub-facial challenge to a search warrant affidavit must show two things. First, he must show that the officer included a false statement either intentionally or with reckless disregard for the truth. Second, he must show that the false statement was material to the finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978). Fagundes made neither showing. We find no error.

Fagundes next contends that his confession was involuntary. The voluntariness of a juvenile's confession is tested by reviewing the totality of the circumstances. *Dutil v. State*, 93 Wn.2d 84, 606 P.2d 269 (1980). Fagundes was a 17 1/2–year–old juvenile who had had extensive contacts with the criminal justice system. On July 14, he was

advised twice of his constitutional rights. The two psychiatrists who testified at the CrR 3.5 hearing stated that in their opinion, Fagundes' confession was voluntary. Fagundes' mother was present when he initially confessed to the crimes, and she testified that his statements were voluntary and were not coerced. Finally, the record does not support the contention that the police promised him psychological help and that the promise overcame his will to resist. *See State v. Forrester,* 21 Wn. App. 855, 587 P.2d 179 (1978); *State v. Riley,* 17 Wn. App. 732, 565 P.2d 105 (1977).

█ Fagundes next alleges that the trial judge erred in admitting the expert testimony of the pathologist and Ms. Cwiklik regarding the presence of seminal fluid. The admissibility of expert testimony lies within the sound discretion of the trial court. *State v. Tatum,* 58 Wn.2d 73, 360 P.2d 754 (1961); *see also* ER 702. Both the pathologist and Ms. Cwiklik testified extensively as to their qualifications to express an opinion. Because the interpretation of the items in evidence, *i.e.,* the existence of a sperm head, the presence of acid phosphatase, and the analysis of the victim's pubic hair, is not within the common experience of the average juror, expert testimony was properly admitted to explain to the jury the significance of the physical evidence. The pathologist, although somewhat inartful in his attempt to explain his findings, did clearly indicate that in his opinion, there was seminal fluid in the victim's vaginal area prior to the time of her death. Similarly, Ms. Cwiklik testified extensively about her testing methods and their general acceptability in the scientific community. The trial judge did not abuse his discretion.

█ Fagundes next contends that the trial judge erred in admitting his confession because the State had failed to prove sufficient corpus delicti. The corpus delicti rule as it bears on admissions of a defendant is reviewed in *State v. Hamrick,* 19 Wn. App. 417, 419, 576 P.2d 912 (1978):

It is clear that admissions of a defendant play a limited role in establishing the corpus delicti. The corpus delicti

must be shown by some independent evidence before the admissions of the defendant may be utilized, but when such independent evidence is adduced, the admission may be considered in combination with the other facts to establish the defendant's guilt beyond a reasonable doubt. The independent evidence is sufficient if it prima facie establishes the corpus delicti. *State v. Meyer,* 37 Wn.2d 759, 226 P.2d 204 (1951); *State v. Zuercher,* 11 Wn. App. 91, 521 P.2d 1184 (1974). "Prima facie" in this context means only that there must be evidence of sufficient circumstances which would support a logical and reasonable deduction of the fact sought to be proved. *State v. DePriest,* 16 Wn. App. 824, 560 P.2d 1152 (1977).

(Footnote omitted.) After analyzing the independent evidence submitted in *Hamrick,* the court concluded at page 420 that the State had not presented "the slight evidence necessary to logically and reasonably" establish the corpus delicti prior to consideration of the defendant's admissions.

Thus, corpus delicti must be considered for two purposes—first, the level of proof necessary prior to admission of defendant's statement and, second, the level of proof necessary to take the case to the jury. In the latter instance, the facts contained in a confession can be considered on the question of whether there is substantial evidence that the crime was committed and that defendant was the perpetrator. In the first instance, however, the level of proof necessary is not so rigorous. The evidence in this case is sufficient because the facts established support a logical and reasonable deduction that the crimes had, in fact, been committed. All the circumstances support the inference that the victim was initially confronted by her assailant in her home, subsequently transported to the remote area, raped, and then stabbed.

Additionally, the purpose of the corpus delicti rule as it pertains to confessions is to ensure that an innocent person will not be convicted absent some corroboration of his admission of guilt. In this case, the State introduced sufficient corroborating evidence to remove any doubt that

Fagundes' confession was reliable. *See State v. Hamrick,*
*supra.*

Finally, Fagundes contends that because the jury found
him guilty of first–degree felony murder, it could not prop-
erly return guilty verdicts on the first–degree kidnaping
and first–degree rape charges. We agree.

In *State v. Johnson,* 92 Wn.2d 671, 600 P.2d 1249 (1979),
our Supreme Court confronted a similar problem involving
multiple convictions for first–degree rape, first–degree kid-
naping, and first–degree assault. It was held that under
Washington's new criminal code, such pyramiding of
charges was improper:

> As we read the statutes, the legislature intended that
> conduct involved in the perpetration of a rape, and not
> having an independent purpose or effect, should be pun-
> ished as an incident of the crime of rape and not addi-
> tionally as a separate crime.

*State v. Johnson, supra* at 676. The court noted that to
convict a defendant of first–degree rape, the State must
prove not only the rape itself, but also the commission of a
separate, underlying felony. Proof of the underlying felony
operates to enhance the punishment for the rape by con-
verting what otherwise would have been a second–degree
rape into a first–degree rape. Thus, proof of the underlying
crime was an essential element of the first–degree rape
charge. Therefore, once the jury convicted Johnson of the
greater offense, the lesser offenses merged in the completed
crime of first–degree rape. Although the underlying felony
serves an additional function in the first–degree murder
context, we conclude that the *Johnson* analysis is equally
applicable.

In this case, proof of the first–degree kidnaping and
first–degree rape provides essential elements of first–degree
murder. RCW 9A.32.030(1)(c). Unlike the underlying offen-
ses in *Johnson,* however, the underlying felonies here per-
formed two distinct functions. First, as in *Johnson,* they
operate to enhance the degree of the murder, *compare*
RCW 9A.32.030(1)(c) *with* RCW 9A.32.050. Second, proof

of the underlying felonies makes unnecessary the proof of premeditation otherwise required to support a first–degree murder conviction. This latter aspect derives from the traditional common–law felony murder doctrine. *See generally United States v. Greene,* 489 F.2d 1145, 1168–69 (D.C. Cir. 1973) (Baselon, C.J., separate statement); R. Perkins, *Criminal Law,* ch. 2, § 1(C) (2d ed. 1969). The fact that the underlying felony serves a dual purpose, however, does not alter the result. Under *Johnson,* once the jury found defendant guilty of first–degree felony murder, the underlying felonies of first–degree rape and first–degree kidnaping merged into the murder. The appropriate remedy is to set aside the convictions and sentences on the first–degree rape and first–degree kidnaping charges. *See State v. Hinz,* 22 Wn. App. 906, 594 P.2d 1350 (1979); *State v. Bresolin,* 13 Wn. App. 386, 534 P.2d 1394 (1975).

The conviction of Fagundes of the lesser offenses of first–degree rape and first–degree kidnaping and the sentences based thereon are set aside. The judgment and sentence for the crime of murder in the first degree is affirmed.

RINGOLD and DURHAM–DIVELBISS, JJ., concur.

Reconsideration denied July 18, 1980.

Review denied by Supreme Court October 10, 1980.