[No. 13969–0–I.   Division One.   April 8, 1985.]

THE STATE OF WASHINGTON, *Respondent*, v. CLIFFORD
BRIAN KOMOTO, *Appellant*.

*Shirley Bennington,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *R. Timothy Crandell, Deputy,* for respondent.

COLEMAN, J.—Clifford B. Komoto appeals his conviction for the crime of felony hit and run under RCW 46.52.020. He assigns error to the trial court's denial of his pretrial motion to suppress certain evidence and denial of his motion to dismiss for failure to establish a prima facie case. We affirm.

On August 27, 1982, Komoto was arrested in his residence without a warrant for felony hit and run and driving while under the influence of alcohol. He was subsequently charged by information with felony hit and run. On September 6 and 7, 1983, the King County Superior Court heard Komoto's motion to suppress his post–arrest statements, his blood test taken at Valley General Hospital, the impoundment of his car, and evidence seized from his car. The trial court denied the motion, ruling that probable cause existed for the felony arrest of Komoto, exigent circumstances justified a warrantless arrest in his residence, and all evidence was properly seized. Following a jury trial, he was convicted and this appeal followed.

## FACTS

On August 27, 1982, at about 1 a.m. a motor vehicle

traveling north struck a pedestrian who was walking in the same direction on the northbound shoulder of Highway 99 near 170th Street in King County. Trooper Gary L. Johnson of the Washington State Patrol arrived at the scene of the accident shortly thereafter. He observed that the victim had severe head injuries. The medics attending to the victim advised Trooper Johnson that the victim would probably not survive.

Two witnesses reported to Trooper Johnson. The first witness, Teresa Johnson, was walking next to the victim when he was struck by a car, but the only detail she remembered about the car was that it was green. The second witness, John McQueen, was driving north on Highway 99 shortly after 1 a.m. when he observed the car in front of him slowly drift to the right off the road, then quickly swerve back to the left, hitting one of the two pedestrians. McQueen saw the pedestrian's body thrown into the air by the impact. McQueen was about 30 feet behind the car, and continued to follow it at about the same distance and at a speed of about 40 to 45 m.p.h., until the car turned left at 154th Street. At that point McQueen was able to see the car's license plate number. He returned to the scene of the accident and reported what he had seen to Trooper Johnson, describing the vehicle as a green Datsun Z–type car and giving the license plate number. Trooper Johnson then ran a registration check of the green Datsun by radio. The broadcast came back with the information that the car was registered to Komoto and provided Komoto's address.

Another Washington State Patrol trooper, Peter Hanson, heard the broadcast and recognized the registered owner as a person he had stopped for erratic driving approximately 26 hours prior to the accident in the same vicinity. The trooper's reason for stopping Komoto on that occasion was that he had been traveling over the legal speed limit and had left his lane several times. Trooper Hanson administered physical sobriety tests and concluded that Komoto had been drinking more than was truly safe, but allowed him to drive home as the stop occurred approximately

three to four blocks from Komoto's residence. Before permitting Komoto to drive home that night, Hanson issued a citation for improper lane travel. The accident in the present case occurred approximately 16 to 18 blocks from Komoto's residence, not far from the previous stop.

After Hanson heard the car registration broadcast on August 27, 1982, he proceeded to Komoto's residence and arrived there at about 2 a.m. He observed the green Datsun with the broadcasted license number in the parking lot of Komoto's apartment complex. Troopers McElroy and Lindgren arrived soon after Hanson. All three noticed that the front end and windshield of the car were damaged and that the car was still warm. The troopers observed no signs of forced entry into the locked vehicle.

Troopers Hanson and McElroy went to Komoto's door, knocked loudly, and yelled. When no one responded, Hanson contacted the assistant manager of the apartment complex and verified that the apartment was Komoto's and that he was the sole occupant. By this time, Hanson had learned that it was likely that the accident victim would die. The other troopers had heard this information during Trooper Johnson's radio broadcast. Hanson placed a call to Senior Deputy Prosecuting Attorney Lee Yates and repeated the facts of the accident and the investigation to Yates. He told Yates that he believed Komoto had been drinking on the night of August 25 when Hanson had cited and released him. Yates advised Hanson that, given the circumstances, probable cause existed to believe that Komoto was the driver of the hit and run vehicle, and that there were exigent circumstances to justify an immediate warrantless arrest of Komoto for the purpose of obtaining a blood sample. Yates testified at the pretrial hearing that he told the trooper to proceed with a warrantless arrest because he feared losing evidence of Komoto's blood alcohol level, which, if Komoto had been drinking that night, would be dissipating.

Following his conversation with Yates, Trooper Hanson obtained a passkey from the assistant manager and

returned to Komoto's apartment with Trooper McElroy. The troopers entered the apartment and found Komoto lying on his bed. They eventually aroused Komoto, advised him of his rights, and then transported him to Valley General Hospital. At the hospital, the troopers again advised Komoto of his rights and told him that because he was under arrest for a hit and run accident involving the likelihood of death, a blood sample would be taken. The sample showed a blood alcohol reading of 0.19 percent. The troopers then took Komoto to the south office of the Washington State Patrol where he was advised of his rights a third time. In response to questioning, Komoto stated that he had been driving his vehicle that evening on Highway 99 in the vicinity of the accident and might have hit a pedestrian.

## ISSUES

1. Did the State establish the corpus delicti of the offense of felony hit and run?

2. Was the information provided by McQueen and Trooper Hanson, coupled with the reasonable inferences to be drawn from that information, sufficient to establish probable cause for Komoto's arrest and, if so, did exigent circumstances justify the warrantless nonconsensual entry and arrest and the subsequent taking of a blood sample?

## CORPUS DELICTI

Komoto contends that the State failed to establish the corpus delicti of felony hit and run. He argues that proof of the corpus delicti of felony hit and run, as in the crime of driving while under the influence, must include evidence on the element of identity. Komoto contends that the State presented no direct or circumstantial evidence that he was the person who committed the crime, apart from his own statements; therefore, the State did not meet the requirements for corpus delicti. In response, the State argues that it established the "slight" proof necessary to establish the corpus delicti prior to admission of Komoto's statements. *See State v. Hamrick*, 19 Wn. App. 417, 420, 576 P.2d 912 (1978). The State notes that Komoto's admissions were

corroborated by testimony from McQueen and the troopers, indicating that the admissions were reliable.

*State v. Meyer,* 37 Wn.2d 759, 763, 226 P.2d 204 (1951) and *State v. Goranson,* 67 Wn.2d 456, 459, 408 P.2d 7 (1965) (quoting *Meyer,* at 763) establish that the identity of the person who has committed the crime is not normally material in establishing the corpus delicti; however, identity must be proven to sustain a conviction of the crime charged. *State v. Hamrick, supra,* relied upon by Komoto, holds that while the corpus delicti of most crimes does not involve identity, the offense of driving while under the influence in that case did require evidence of the defendant's identity. No Washington case has addressed the issue in the context of felony hit and run.

To prove that someone has committed the offense of driving while under the influence, the State must show that the defendant operated or was in actual physical control of a vehicle while he was under the influence. Evidence that the defendant was under the influence may be proven by one of three alternative methods. RCW 46.61.502; *State v. Franco,* 96 Wn.2d 816, 823, 639 P.2d 1320 (1982). The defendant's physical condition is by definition a critical element of the crime. In contrast, felony hit and run does not require any showing of the defendant's physical state; rather, it requires proof that the driver did not perform the duties specified in the statute. RCW 46.52.020. Thus, proof of the condition of the driver is not necessary to establish the existence of a criminal agency in felony hit and run.

Moreover, the facts in *Hamrick* also distinguish that case from the present one. In *Hamrick,* no one testified that they observed the defendant driving or in actual physical control of the vehicle while intoxicated. The officer arrived after the accident and spoke with the defendant, who was present and admitted that he had been driving the car involved in the accident. The only evidence connecting the defendant with control of the car in *Hamrick* was his own admission. Washington cases clearly and consistently hold that a conviction cannot be sustained on a confession alone;

some corroborative evidence establishing the corpus delicti is necessary to convict when a confession is part of the evidence. *State v. Ryan,* 103 Wn.2d 165, 177–78, 691 P.2d 197 (1984). Unlike *Hamrick,* in the present case, as our analysis demonstrates, the record provides independent evidence of Komoto's identity as the driver.

Proof of the corpus delicti of any crime requires evidence that the crime charged was committed by someone. *State v. Fellers,* 37 Wn. App. 613, 615, 683 P.2d 209 (1984). The amount of proof needed is "evidence of sufficient circumstances which would support a logical and reasonable deduction of the fact sought to be proved, . . .", *State v. DePriest,* 16 Wn. App. 824, 826, 560 P.2d 1152 (1977), which is less than that necessary to take the case to the jury, *State v. Fagundes,* 26 Wn. App. 477, 484, 614 P.2d 198, 625 P.2d 179, *review denied,* 94 Wn.2d 1014 (1980). To prove that the crime of felony hit and run was committed by someone, the State was required to show that a motor vehicle was driven in this state; the vehicle was involved in an accident; an injury or death of a person resulted; and the driver of the vehicle did not stop immediately and remain at the scene of the accident. RCW 46.52.020(1), (3). Two witnesses testified that they observed the green car hit the victim without stopping. This testimony, coupled with evidence of injury to the accident victim, was sufficient to establish the corpus delicti of the crime.

Even if we were to find that the *Hamrick* requirement of establishing identity did apply in these circumstances, the facts, independent of Komoto's admission, show that Komoto was the driver for the purpose of proving the corpus delicti. Prior to admission of Komoto's statements, McQueen specifically described the car involved in the accident, and gave the license number which matched the license of Komoto's car. The car was registered to Komoto and was found parked in Komoto's space in the parking lot of his apartment complex shortly after the accident occurred. The troopers observed recent damage to the car consistent with the reported accident. The troopers also

noted that the hood of the car was still warm. Finally, the troopers noticed no signs of forced entry into the locked vehicle, suggesting that if anyone had been using the car, that person was Komoto.

This evidence fulfilled another purpose of the corpus delicti rule as it pertains to confessions: to ensure that an innocent person will not be convicted absent some corroboration of his admission of guilt. *Fagundes,* at 484; *see Ryan,* at 177–78. Thus, the State met its burden of proof in independently establishing the corpus delicti prior to admission of Komoto's statements.

Once the corpus delicti of the crime has been shown by independent evidence, the admissions of the defendant "may be considered in combination with the other facts to establish the defendant's guilt beyond a reasonable doubt." *Fagundes,* at 484 (quoting *Hamrick,* at 419). To take the case to the jury, there must be "substantial evidence that the crime was committed and that defendant was the perpetrator." *Fagundes,* at 484. In response to questions on the alcohol and drug report form, Komoto told the troopers that he was driving on Highway 99 in the area of the accident on the morning of August 27, 1982; he had swerved to avoid two pedestrians; it was possible that he hit a pedestrian on Highway 99; no one else drove his car or had keys to it; and he had been drinking. The circumstantial evidence, together with Komoto's statements and all the facts, was sufficient to allow the case to proceed to the jury. Consequently, the court did not err in denying Komoto's motion to dismiss.

### PROBABLE CAUSE AND EXIGENT CIRCUMSTANCES

Citing *State v. Judge,* 100 Wn.2d 706, 711, 675 P.2d 219 (1984), Komoto contends that the taking of blood samples is a "search and seizure" under the state and federal constitutions, and that prior to seizure, the State must have a "'clear indication' that in fact the desired evidence will be found." *Judge,* at 711. Komoto also argues that the warrantless, nonconsensual entry of his residence was uncon-

stitutional and all fruits flowing therefrom must be suppressed.

The constitutionality of both the warrantless, nonconsensual entry and the subsequent taking of blood samples largely depends on whether the troopers had probable cause to believe that blood alcohol evidence would be found in Komoto's body. With respect to the warrantless entry, it is well settled that police must show probable cause and exigent circumstances (or consent to entry) before making a warrantless entry into a person's home for a felony arrest. *State v. Welker,* 37 Wn. App. 628, 632, 683 P.2d 1110 (1984); *Payton v. New York,* 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980). In the present case, the State contends the troopers had probable cause to believe both that Komoto had been drinking, and that blood alcohol evidence was being destroyed by his body's natural effort to eliminate alcohol from his system. Thus, the State concludes that the imminent destruction of blood alcohol evidence created exigent circumstances sufficient to justify the warrantless entry of Komoto's residence.

Setting aside for the moment the question of exigent circumstances, we turn first to the issue of whether there was probable cause to believe that evidence of blood alcohol would be relevant in this case. On this issue, we find the reasoning in *People v. Keltie,* 148 Cal. App. 3d 773, 780, 196 Cal. Rptr. 243 (1983) instructive:

> The biological fact that blood–alcohol content decreases with time would not in itself justify warrantless entry into the homes of persons suspected of felony driving offenses, since not all such offenses are due to drinking or proven by evidence of drinking, and not all drunk drivers proceed immediately to their homes. In order to justify an entry on this basis, the police would have to have probable cause to believe that the suspect was under the influence, that he has committed a felony of which being under the influence of alcohol is an element, and that he is presently at home. In addition, the time interval between the offense and the entry must be brief enough so that evidence of drinking would still remain in

the blood. Without the concurrence of these four factors, the possibility of losing evidence of guilt through delay would be too speculative to justify a nonconsensual intrusion into a private residence.

(Footnote omitted.) The four criteria outlined by the *Keltie* court are satisfied by the evidence in this case.[1] First, the troopers had probable cause[2] to believe that Komoto had been drinking because: (1) a witness described Komoto's erratic driving to the troopers; (2) the witness also described how Komoto's vehicle veered off the road, hit the pedestrian victim, and then continued down the highway; (3) the accident occurred at about 1 a.m., approximately 16 to 18 blocks from Komoto's residence; (4) one of the arresting troopers had stopped Komoto only 26 hours earlier for erratic driving; (5) this earlier stop occurred only three to four blocks from Komoto's residence; and (6) the trooper making the earlier stop had detected the odor of intoxicants on Komoto's breath and, after administering physical sobriety tests, had concluded that Komoto was physically affected by alcohol. These facts are consistent with, and give rise to reasonable inferences of driving under the influence. Automobiles do not normally leave the road

[1] We recognize that *People v. Keltie*, 148 Cal. App. 3d 773, 780, 196 Cal. Rptr. 243 (1983) speaks in terms of *felony* offenses. However, though we have focused our analysis on an offense which, in this case, happens to be classified as a felony, we leave for another day the question of whether a warrantless entry would be justified where the underlying offense is of a less serious nature. In this regard we note that after *Keltie*, the United States Supreme Court and a California appellate court rejected a bright line felony/nonfelony approach to warrantless entries. *Welsh v. Wisconsin*, __ U.S. __, 80 L. Ed. 2d 732, 104 S. Ct. 2091 (1984); *People v. Hampton*, __ Cal. App. 3d __, 209 Cal. Rptr. 905 (1985). The *Hampton* court distinguished *Keltie* and upheld a warrantless entry even though the underlying offense of drunk driving was classified as a misdemeanor. In our view, the seriousness of the offense, rather than its technical classification, is the proper focus under *Keltie*, *Hampton*, and *Welsh*. See our discussion of *Welsh*, *infra*.

[2] "Probable cause is based upon the totality of facts and circumstances within the knowledge of the arresting officer." *State v. Cottrell*, 86 Wn.2d 130, 132, 542 P.2d 771 (1975). The test is one of reasonableness in light of the *time*, the *place*, the *pertinent circumstances*, and the considerations of everyday life on which prudent men, not legal technicians, act. *Cottrell*, at 132.

unless the driver is impaired or inattentive. Furthermore, since the troopers knew that nearly identical conduct involving the same vehicle and driver occurred at approximately the same time and place on the previous evening, and since they also knew that the driver was impaired by alcohol on the previous evening, then the troopers could reasonably infer that alcohol was involved in the most recent incident.

In short, taken together, these facts and circumstances were sufficient "to warrant a man of reasonable caution" in a belief that Komoto had been drinking on the night of the accident. *State v. Fricks,* 91 Wn.2d 391, 398, 588 P.2d 1328 (1979); *State v. Turner,* 29 Wn. App. 282, 287, 627 P.2d 1324 (1981). We note that the facts and circumstances known to the troopers in this case were particularly indicative of an alcohol–related offense when viewed in light of the troopers' previous police experience. *See State v. Kirvin,* 37 Wn. App. 452, 456–57, 682 P.2d 919 (1984) (standard for probable cause is "not what might appear to be probable cause to a passerby, but what would be probable cause to a reasonable, cautious, and prudent officer.'"). One of the arresting troopers testified that, in his experience, the likelihood that an early morning hit and run accident will be alcohol related is "very, very high."

Second, in view of the above mentioned circumstances, the severity of the victim's injuries, and the information regarding fresh damage to and eyewitness identification of Komoto's vehicle, a man of reasonable caution would be warranted in a belief that Komoto (1) was operating a motor vehicle; (2) was driving while intoxicated; (3) was involved in a felony hit and run accident; and (4) had struck a pedestrian who, according to paramedics, was near death. While these beliefs could eventually give rise to charges of driving while intoxicated, felony hit and run, and negligent homicide, we find the latter alone sufficient to justify entry under these circumstances.[3]

---

[3]We recognize that death had not in fact occurred at the time of the entry;

Third, the record contains ample evidence supporting a conclusion that, at the time of their entry, the arresting troopers had probable cause to believe that Komoto was inside his residence. Three troopers testified that they found Komoto's freshly damaged car in the parking lot of his apartment complex. All three noted that the hood of Komoto's car was still warm. Also, prior to entering Komoto's apartment, one trooper looked in the apartment window and noticed that the lights and television were on. This trooper then contacted the assistant manager of the apartment and verified that the apartment was Komoto's, and that Komoto was the sole occupant. Under these circumstances, the troopers had probable cause to believe that Komoto was inside the apartment.

Finally, since only an hour or so had elapsed between the accident and the entry, blood alcohol evidence was clearly still retrievable.

■ Having concluded that the troopers had probable cause to arrest Komoto for an alcohol–related offense, we must now determine whether "exigent circumstances" justified the warrantless and nonconsensual entry into Komoto's residence. Though it is not yet clear exactly what circumstances qualify as "exigent circumstances," several broad categories have been established by appellate courts, including: (1) hot pursuit; (2) fleeing suspect; (3) danger to public or arresting officer; (4) mobility of the vehicle; and (5) destruction or mobility of evidence. *State v. Counts,* 99 Wn.2d 54, 60, 659 P.2d 1087 (1983). As indicated earlier, the State contends that the natural and inexorable dissipation of blood alcohol evidence may create a "destruction of evidence" exigency sufficient to justify a warrantless entry. This proposition is generally accepted by federal and state courts. *Welsh v. Wisconsin,* __ U.S. __, 80 L. Ed. 2d 732,

---

however, the troopers had reasonable grounds to believe that death of the victim was imminent. This strong likelihood of death, coupled with the blood alcohol evidence exigency discussed later in this opinion, created an emergency situation justifying entry for the preservation of important evidence.

104 S. Ct. 2091 (1984); *People v. Keltie,* 148 Cal. App. 3d 773, 780, 196 Cal. Rptr. 243 (1983); *Stark v. State Dep't of Motor Vehicles,* 104 A.D.2d 194, 483 N.Y.S.2d 824 (1984); *cf. State v. Judge,* 100 Wn.2d 706, 712, 675 P.2d 219 (1984).

Beyond recognizing that the percentage of blood alcohol begins to diminish shortly after drinking stops, courts have also noted that any delay in testing for blood alcohol evidence creates a risk that the suspect may consume additional alcohol or other intoxicants during the delay, thereby rendering any test results inaccurate. *Welsh,* 80 L. Ed. 2d at 752; *Stark v. State Dep't of Motor Vehicles, supra.* However, these factors do not automatically justify warrantless entries whenever blood alcohol evidence is dissipating. In *Welsh,* the United States Supreme Court held that an important factor in determining whether an exigency exists is "the gravity of the underlying offense for which the arrest is being made." *Welsh,* 80 L. Ed. 2d at 745. While the *Welsh* Court stopped short of drawing a bright line between felonies and nonfelonies, the opinion indicates that circumstances are more clearly exigent where the offense is a "serious crime." In the instant case, one of the possible offenses underlying Komoto's arrest was negligent homicide.[4] In this state, negligent homicide[5] is a serious offense punishable by up to 10 years in prison. The severity of this penalty clearly places the present case within the scope of the "serious crimes" contemplated in

---

[4]RCW 46.61.520 (1981) provides:

"Negligent homicide by motor vehicle—Penalty. (1) When the death of any person shall ensue within three years as a proximate result of injury received by the driving of any vehicle by any person while under the influence of or affected by intoxicating liquor or drugs, or by the operation of any vehicle in a reckless manner or with disregard for the safety of others, the person so operating such vehicle shall be guilty of negligent homicide by means of a motor vehicle.

"(2) Any person convicted of negligent homicide by means of a motor vehicle shall be punished by imprisonment in the state penitentiary for not more than ten years, or by imprisonment in the county jail for not more than one year, or by fine of not more than one thousand dollars, or by both fine and imprisonment."

[5]The negligent homicide statute was amended in 1983. The offense is now called "vehicular homicide".

*Welsh.* Thus, we conclude that the gravity of the offense and the imminent destruction of evidence created an exigency sufficient to justify the warrantless, nonconsensual entry of Komoto's apartment.[6]

Komoto also contends that the taking of blood samples was unconstitutional in this case because the troopers did not have a "clear indication" that blood alcohol evidence would be found. We disagree. Komoto's argument on this point mistakenly focuses on whether the troopers had a "clear indication" *prior* to entering Komoto's apartment. The "clear indication" referred to in *State v. Judge, supra,* is not a test for probable cause to enter a dwelling; rather,

---

[6]Our conclusion gains support from, and is consistent with the tenor of drunk driving legislation in this state. In particular, our statute regarding blood alcohol tests announces a strong state interest in preserving blood alcohol evidence in circumstances such as those presented here. RCW 46.20.308 (1981). The statute states in pertinent part:

46.20.308 Implied consent—Revocation, etc., for refusal to submit to chemical tests to determine alcoholic content of blood. (1) Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent, subject to the provisions of RCW 46.61.506, to a chemical test or tests of his breath or blood for the purpose of determining the alcoholic content of his blood if arrested for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor. The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor. Such officer shall inform the person of his right to refuse the test, and of his right to have additional tests administered by any qualified person of his choosing as provided in RCW 46.61.506. The officer shall warn the driver that his privilege to drive will be revoked or denied if he refuses to submit to the test. Unless the person to be tested is unconscious, the chemical test administered shall be of his breath only: *Provided,* That if an individual *is under arrest for the crime of negligent homicide by motor vehicle* as provided in RCW 46.61.520, *or if an individual is under arrest for the crime of driving while under the influence of intoxicating liquor or drugs* as provided in RCW 46.61.502, *which arrest results from an accident in which another person has been injured and there is a reasonable likelihood that such other person may die as a result of injuries sustained in the accident, a breath or blood test may be administered without the consent of the individual so arrested.*

(Italics ours.) (This statute was amended in 1983 to reflect the change from "negligent homicide" to "vehicular homicide".)

the test has to do with probable cause to "seize" a suspect's blood without a warrant. Thus, the facts supporting a "clear indication" could include facts lawfully obtained at least up until Komoto was taken to the hospital. In this case, such facts would include the troopers' observations of Komoto inside his apartment. In any event, if the "clear indication" referred to in *Judge* is equivalent to the probable cause needed to enter Komoto's dwelling, even if we consider only the facts known prior to entry, our previous analysis of probable cause resolves this issue against Komoto.

Finally, Komoto argues that the troopers should have obtained a telephonic search warrant prior to entering his apartment pursuant to CrR 2.3(c). Though the rule empowers an officer to seek telephonic approval from a magistrate to engage in a search, there is no indication that procedures for complying with the rule were in place.[7] We hold, however, that the need for the *immediate* taking of a blood sample under the circumstances of this case was a sufficient exigency to justify proceeding without a warrant, or without attempting to obtain a telephonically authorized warrant. As we noted previously in this opinion, *any delay* in testing for blood alcohol evidence creates a risk that a suspect will consume additional intoxicants during the delay, thereby casting doubt on the accuracy of any tests.

Finding no error, the judgment of the trial court is affirmed.

RINGOLD and GROSSE, JJ., concur.

Review denied by Supreme Court August 23, 1985.

---

[7]We urge the State to undertake implementation of CrR 2.3(c). We note that in some circumstances, the presence of the rule authorizing telephonic search warrants may be sufficient to defeat an exigent circumstances argument. *See State v. Ringer,* 100 Wn.2d 686, 674 P.2d 1240 (1983).