[Nos. 7501–6–II; 7566–1–II; Division Two. October 25, 1985.]
7844–9–II; 7894–5–II.

THE CITY OF BREMERTON, *Petitioner*, v. JACK
CORBETT, *Respondent*.

THE CITY OF BREMERTON, *Petitioner*, v. MARY
A. CARR, *Respondent*.

THE CITY OF BREMERTON, *Petitioner*, v. KIM
DUANE LEBEDA, *Respondent*.

THE CITY OF BREMERTON, *Petitioner*, v. SHERRIE
G. BURKHART, *Respondent*.

*William A. Broughton, City Attorney,* and *Mary B. Killian, Assistant,* for petitioner.

*Jeffrey L. Tolman,* for respondent Corbett.

*Michael E. Klemetsrud, Terrance W. Oostenbrug,* and *Crawford, McGilliard, Peterson & Yelish,* for respondents Carr, et al.

WORSWICK, C.J.—The City of Bremerton appeals dismissal of three driving while intoxicated cases (RCW 46.61-.502) and one physical control case (RCW 46.61.504), in which the municipal court held the City's evidence insufficient to satisfy the corpus delicti–corroboration rule as a prerequisite to allowing each defendant's admission into evidence. *State v. Hamrick,* 19 Wn. App. 417, 576 P.2d 912 (1978). The Superior Court affirmed. We accepted discretionary review, consolidated the cases, and now reverse. We hold that the *Hamrick* corroboration rule was satisfied in each case.

Mary A. Carr, Sherrie G. Burkhart, and Kim Duane Lebeda were each charged with driving while intoxicated. Jack Corbett was charged with being in actual physical control of a motor vehicle while intoxicated. The charges were based on separate incidents but had two common elements. In each case, evidence of the defendant's ownership of the vehicle was presented, and each defendant had admitted driving. Considered under the principle governing motions to dismiss for insufficiency of the evidence,[1] the evidence also established the following facts.

City v. Carr
On February 26, 1983, at about 3 a.m., while driving

---

[1]Such a motion admits the truth of the evidence and all reasonable inferences that can be drawn from it. *State v. Goranson,* 67 Wn.2d 456, 408 P.2d 7 (1965).

through an intersection in the city of Bremerton, a Ms. Sheldon was struck by a Ford Pinto registered to Carr. Officer Scott, on routine patrol, arrived at the scene minutes later. Carr was standing between the Pinto and Ms. Sheldon's car. Scott asked who had been driving the cars, and Carr walked up to him, license in hand and said, "I'm the driver of the Pinto." She seemed intoxicated, so he put her in his patrol car. He then asked the other occupant of the Pinto, who was seated in the front on the passenger side, to move the car. Despite repeated attempts, she could not start it. The Pinto has a manual transmission, and she did not put the gears in neutral or depress the clutch. Finally, Scott moved the car himself; he had no trouble starting it.

### City v. Burkhart

At about 11:30 p.m., on March 27, 1983, Officer Johnson came upon an accident. A car towing a small trailer had failed to negotiate a corner and had gone over an embankment. The scene was deserted when he arrived. He contacted the car's registered owner, Burkhart, who admitted to being the driver at the time of the accident.

Moments after hearing the noise of an accident, another witness had seen a bystander help a girl holding a small child out of the car and up an embankment, and then return to help another girl.

Burkhart's boyfriend, Mark Sarber, had been driving the car earlier in the evening with Burkhart, their small child, and his sister as passengers. Burkhart dropped him off at their house about 9:30 p.m., and drove off with his sister and the child. His sister had only been in town for about a week and did not know her way around Bremerton. Burkhart drove, using her own set of keys. Later that evening, Burkhart returned to the house on foot carrying their child. She was crying and upset and told Sarber she had just been in a wreck. He found the car about two blocks from their home.

### City v. Lebeda

In the early morning of April 24, 1982, a 2–car collision

occurred at an intersection. Officer Carver, who was dispatched to the accident scene, saw two unoccupied vehicles (a pickup truck and a Mercury), each extensively damaged on the driver's side. He determined that the two cars collided about 6 feet into the Mercury's lane of traffic.

Carver saw only three people in the vicinity of the accident—Lebeda, a Mr. Harper and a Mr. Parker. Lebeda and Parker appeared to be trying to assist Harper, who was dazed and bleeding profusely from head injuries. Three times Harper tried to walk toward the Mercury. The Mercury's windshield was shattered and the driver's compartment was covered with blood. Parker, who was uninjured and said he had just been walking by, was identified, questioned and allowed to leave.

When Carver tried to examine Harper, Lebeda kept pushing his flashlight away. Carver noticed that Lebeda's eyes were red and watery, and that his speech was slurred. He also noted that Lebeda had freshly bruised and scraped knees. The accident occurred about two blocks west of Lebeda's residence.

### City v. Corbett

At 11 p.m. on March 17, 1983, while driving west on a busy city street, Officer Long saw a stalled car on the inside of the eastbound lane. Corbett, the registered owner of the car, was peering under the hood. As Long turned around to return to the scene, he saw Corbett get into the driver's seat. When he pulled up, there were no keys in the ignition, but several dashboard lights were on. He found the car keys on the floor of the driver's side. No one else was in or near the car. The car ultimately had to be towed from the roadway.

### The Corpus Delicti–Corroboration Rule

Corpus delicti means the body of the crime. *Bouvier's Law Dictionary* 686 (3d rev. 1914). The cases use the term to describe the requirement that, in any criminal case, the State must prove a crime as the first prerequisite to conviction. However, the cases also use it in connection

with the special requirement that independent corroborating evidence of a crime be presented before the trier of fact can consider the defendant's confession. *See State v. Fagundes,* 26 Wn. App. 477, 614 P.2d 198, 625 P.2d 179, *review denied,* 94 Wn.2d 1014 (1980).[2] We deal here only with the corroboration rule.

In most cases, it is unnecessary that the defendant be identified; the State need only show that a crime was committed by someone. *State v. Goranson,* 67 Wn.2d 456, 408 P.2d 7 (1965); *State v. Meyer,* 37 Wn.2d 759, 226 P.2d 204 (1951). In *Hamrick,* we held that, in cases in which intoxication as well as operation or control of a vehicle is an element, identity of the defendant is also necessary. *Hamrick,* 19 Wn. App. at 419. This is so because there can be no crime without a showing of intoxication; thus, evidence of the specific defendant's intoxication is essential and cannot be determined without identifying the defendant. *See State v. Komoto,* 40 Wn. App. 200, 205, 697 P.2d 1025 (1985).

### THE EVIDENCE REQUIRED

The evidence need not be sufficient to take the case to the jury. *See State v. Fellers,* 37 Wn. App. 613, 683 P.2d 209 (1984). Therefore, whether sufficient corroborating evidence has been introduced is a question of law for the court. It is not necessary that the evidence corroborate a crime beyond a reasonable doubt[3] or by a preponderance of evidence. *State v. DePriest,* 16 Wn. App. 824, 560 P.2d 1152 (1977). The question presented to the court, then, is this: without considering whether the evidence proves a

---

[2]There is room here for confusion which might be erased by the use of more descriptive terms. Corpus delicti, as a general requirement, only means that the State must present a case sufficient to go to the jury. The corroboration requirement is self–explanatory. *See Fagundes,* 26 Wn. App. at 484. These rules are different and should have different names.

[3]When such evidence is adduced, it is then for the jury to determine if the admission, in combination with other facts, establishes guilt beyond a reasonable doubt. *State v. Meyer, supra; State v. Hamrick, supra; State v. Zuercher,* 11 Wn. App. 91, 521 P.2d 1184 (1974).

crime beyond a reasonable doubt or even by a preponderance of evidence, does it show sufficient circumstances to support a logical and reasonable deduction of the fact sought to be proved, *i.e.*, that this defendant drove, or controlled, the vehicle? The evidence is sufficient if it supports a reasonable inference of this fact. It is not necessary to exclude all other inferences, or even to determine whether the inference of this fact is the strongest.[4]

### ADMISSIONS REQUIRING CORROBORATION

 Washington cases have not focused explicitly on what admission must be corroborated. In *Hamrick,* we questioned the need for a corroboration rule. We concluded that, in balance, it was best to retain the rule *to protect against potential police abuses. Hamrick,* 19 Wn. App. at 420. Implicit in that discussion is the suggestion that corroboration is needed, if at all, only where police abuse is a serious potential. We have found no Washington case holding that admissions other than those elicited in a classical custodial police interrogation require corroboration.[5] Con-

---

[4]The record shows some confusion concerning the order of proof. *Hamrick* holds that the corpus delicti must be shown by independent evidence before the admission may be *"utilized"* by the State. *Hamrick,* 19 Wn. App. at 419. There is no requirement that the prosecution establish the corpus delicti before the admission is *heard* by the judge or the jury. The trial court may hear the evidence outside the presence of the jury and decide at that time whether the City has met its burden, or it may admit the statement before the corpus delicti is sufficiently established, on the condition it will be corroborated later. The order is within the trial court's discretion. *State v. Smith,* 12 Wn. App. 720, 728, 531 P.2d 843 (1975).

[5]*E.g., State v. Meyer, supra* (defendants signed confessions after they were interrogated by a police officer); *State v. Komoto, supra* (defendant had a blood sample taken, was advised of his rights three times, and finally, in response to questioning, admitted that he had been driving in the vicinity of the accident and might have hit a pedestrian); *State v. Fagundes, supra* (confession made after defendant was advised of his rights and confronted with evidence of the crime). *See also People v. Oliver,* 111 Mich. App. 734, 314 N.W.2d 740 (1981); *People v. Hamp,* 110 Mich. App. 92, 312 N.W.2d 175 (1981).

*State v. Zuercher, supra,* involved both custodial and noncustodial admissions, and the opinion does not distinguish between them. However, the distinction was unnecessary, as we found sufficient corroboration to support admission of all statements. Likewise, in *State v. Fellers, supra,* the court simply held that the

sistent with the *Hamrick* decision and with scholarly commentary,[6] we now hold that corroboration is required only for admissions elicited by police questioning in circumstances requiring *Miranda* warnings. *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). This gives trial courts a clear and much needed test as to when an admission must be corroborated.

## APPLICATION OF THE CORROBORATION RULE

Carr: Several facts point to Carr as the driver: (1) she is the registered owner[7] of the Pinto, (2) the other occupant

corpus delicti was established before the defendant's admission was considered. *Fellers,* 37 Wn. App. at 615. It never reached the question of whether the admission was of the type that must be corroborated.

Arguably, the federal rule is *contra. See, e.g., Smith v. United States,* 348 U.S. 147, 99 L. Ed. 192, 75 S. Ct. 194 (1954); *United States v. Trombley,* 733 F.2d 35, 37 (6th Cir. 1984); *Kaneshiro v. United States,* 445 F.2d 1266, 1270 (9th Cir.), *cert. denied,* 404 U.S. 992, 30 L. Ed. 2d 543, 92 S. Ct. 537 (1971).

[6]7 J. Wigmore, *Evidence* § 2070, at 510 (rev. 1978) questions the policy of the rule:

"The policy of any rule of the sort is questionable. No one doubts that the warning which it conveys is a proper one, but it is a warning which can be given with equal efficacy by counsel or (in a jurisdiction preserving the orthodox function of judges) by the judge in his charge on the facts. Common intelligence and caution, in the jurors' minds, will sufficiently appreciate it, without formulating it in a rule of law. Moreover, the danger which it is supposed to guard against is greatly exaggerated in common thought. That danger lies wholly in a false confession of guilt. Such confessions, however, so far as handed down to us in the annals of our courts, have been exceedingly rare. Such a rule, though not really needed, might be at least merely superfluous. But this rule, and all such rules, are today constantly resorted to by unscrupulous counsel as mere verbal formulas with which to entrap the trial judge into an error of words in his charge to the jury. These capabilities of abuse make it often a positive obstruction to the course of justice." (Footnote and citation omitted.)

[7]All defendants argue that registered ownership does not prove the identity of the driver. These arguments go to the weight of the evidence, not its admissibility or sufficiency, when coupled with other evidence, for purposes of the corroboration rule. At least where there is evidence that the registered owner was involved in, or at the scene of, the accident, it is reasonable to infer that the registered owner was the driver. *Accord, State v. Komoto, supra,* a hit and run case where registration in Komoto's name was considered important corroborative evidence. *See also State v. Smith,* 31 Or. App. 321, 570 P.2d 409 (1977); *State v. Campbell,* 44 Or.

of the Pinto was sitting in the passenger seat and was unable to start the car, and (3) Carr was standing outside the Pinto between the two cars. From this, it is reasonable to infer that Carr was the driver. Moreover, Carr was not being questioned as a suspect of the crime when she admitted that she was the driver. Although these facts satisfy the *Hamrick* rule, Carr's admission falls outside of the rule and was admissible without corroboration.

Burkhart: Burkhart's statement to her boyfriend ("I have just had a wreck") does not require corroboration. *See* ER 801(d)(2). At the time she made the statement, Burkhart had never been approached by the police and was not being questioned; her spontaneous utterance is not within the rule. This statement, combined with the evidence that (1) she had been driving earlier, (2) she was the registered owner of the car, and (3) Sarber's sister was unfamiliar with the area, supports a reasonable inference that she was the driver.

Lebeda: In *Hamrick,* the State offered no evidence of car registration and no circumstantial evidence that the defendant, who admitted he was the driver, owned either of the two cars involved in the accident. Nothing connected the defendant with the control of the car other than the fact that he was present when the investigating officer arrived. *Hamrick,* 19 Wn. App. at 419–20. The facts surrounding Lebeda's arrest are in stark contrast to *Hamrick.* Here, (1) the blood and the Mercury's cracked windshield are consistent with Harper's injuries but not with Lebeda's, (2) the pickup was in the accident and Lebeda's injuries are consistent with an accident, (3) Lebeda is the registered owner of the pickup and lived nearby, and (4) the only other person present said he was a passerby, had no apparent injuries, and showed no concern for either vehicle. It is reasonable to infer that Lebeda was the driver of the pickup.

Corbett: We have no difficulty in inferring that Corbett

---

App. 3, 604 P.2d 1266 (1980). This type of evidence was absent in *Hamrick.*

was in physical control of the car while intoxicated. The previously stated facts so clearly permit the necessary inference that we do not need to discuss them.[8]

Reversed.

REED and ALEXANDER, JJ., concur.

Review granted by Supreme Court January 10, 1986.

---

[8]We will, however, briefly discuss one of Corbett's arguments. Citing *State v. Smelter,* 36 Wn. App. 439, 674 P.2d 690 (1984), he argues that, because the keys were not in the ignition and the engine was not running, the City did not establish a prima facie case of physical control. The argument is frivolous. In *Smelter,* the issue was whether an inoperable vehicle fits within the meaning of the statutory term "physical control." The bulk of Corbett's argument is irrelevant to the issue of whether the City's evidence was sufficient to corroborate his admission. Further, it is curious that Corbett relies on *Smelter,* since the court's definition of physical control is inapposite to Corbett's position. *Smelter,* 36 Wn. App. at 444–45 (if circumstantial evidence permits an inference that the car was where it was because of the defendant's choice, the defendant was in actual physical control even if the car was inoperable).