

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-14-00456-CR

THE STATE OF TEXAS                               APPELLANT

V.

DENNIS M. TAYLOR                                    STATE

----------

### FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 1325354D

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

The State appeals from the trial court's order granting appellee Dennis M. Taylor's motion to suppress. In three points, the State argues that the trial court abused its discretion by ruling that the arresting officer in this case violated Taylor's Fourth Amendment rights when he had medical personnel perform a

---

[1]*See* Tex. R. App. P. 47.4.

mandatory blood draw from Taylor in accordance with Texas Transportation Code section 724.012(b). Tex. Transp. Code Ann. § 724.012(b) (West 2011). We will affirm.

## II. BACKGROUND

The facts adduced at the suppression hearing in this case are not in dispute. After being dispatched on a disorderly-conduct complaint, Keller Police Officer Johnathan Hicks stopped Taylor's vehicle. According to Hicks's testimony, when he made contact with Taylor, he smelled alcohol on Taylor's breath and person, and Taylor demonstrated slurred speech. Taylor also admitted to Hicks that he had consumed "a couple of margaritas" that night. Other indicia of intoxication included Taylor's failure of the horizontal gaze nystagmus test and his inability to successfully complete the walk-and-turn test. Taylor refused further field-sobriety tests, and Hicks arrested him for DWI with a child passenger.[2] *See* Tex. Penal Code Ann. § 49.045 (West 2014). Upon arriving in custody at the Keller Police Department, Taylor received DWI-related admonishments and then refused to submit to a blood test when requested. Hicks then took Taylor to a nearby hospital and obtained a warrantless, non-consensual blood-draw.

Hicks testified that he possessed the time, ability, and articulable facts to obtain a warrant, but said instead that he relied solely on the Transportation

---

[2]There were four children who were passengers in Taylor's vehicle.

Code's mandatory provisions of the implied-consent statute. *See* Tex. Transp. Code Ann. § 724.012(b). A registered nurse drew Taylor's compelled sample a little over an hour after the arrest. The trial court granted Taylor's suppression motion regarding the blood draw, and this accelerated appeal by the State followed. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (West Supp. 2014) (providing that under specific conditions, the State may appeal an order that "grants a motion to suppress evidence").

## III. DISCUSSION

Following the United States Supreme Court's decision in *Missouri v. McNeely*, the court of criminal appeals has held that the provisions in the Transportation Code do not, taken by themselves, form a constitutionally valid alternative to the Fourth Amendment warrant requirement. --- U.S. ---, 133 S. Ct. 1552, 1563 (2013); *State v. Villarreal*, --- S.W.3d ---, No. PD-0306-14, 2014 WL 6734178, at *10–16 (Tex. Crim. App. Nov. 26, 2014) (reh'g granted). Specifically, the court in *Villarreal* rejected the State's arguments that (1) a warrantless, nonconsensual blood test under the Transportation Code should be upheld as categorically reasonable under the consent exception—applicable in the form of a prior waiver through implied consent, the automobile exception, the special-needs exception, or the search-incident-to-arrest exception, (2) a blood draw should be treated as a seizure instead of a search, and (3) such a search may be upheld on the basis that it is reasonable under a general Fourth Amendment balancing test. *Id.* at ---, 2014 WL 6734178, at *10–17. As the

3

State points out, the court of criminal appeals granted rehearing of *Villarreal* on February 25, 2015.

Even after the court of criminal appeals granted rehearing, however, this court, along with several other Texas intermediate courts of appeals, has consistently followed the *Villarreal* precedent. *See Bowyer v. State*, No. 02-13-00315-CR, 2015 WL 1120332, at *1 (Tex. App.—Fort Worth, Mar. 12, 2015, pet. filed) (mem. op., not designated for publication); *see also Burcie v. State*, No. 08-13-00212-CR, 2015 WL 2342876, at *1 (Tex. App.—El Paso, May 14, 2015, no pet.) (not designated for publication); *Moser v. State*, No. 04-13-00826-CR, 2015 WL 1938865, at *1 (Tex. App.—San Antonio, Apr. 29, 2015, pet. filed) (mem op., not designated for publication).

In this case, in addition to the array of arguments that this court has already rejected in our cases that have followed *Villarreal*, the State argues that an exigency exception to the Fourth Amendment warrant requirement, based on the gravity of the underlying offense, should apply to the Transportation Code's mandatory provisions of the implied-consent statute and that upon considering this proposition, we should hold that the Transportation Code's mandatory provisions of the implied-consent statute are reasonable under a Fourth Amendment analysis. *See Burks v. State*, 454 S.W.3d 705, 709 (Tex. App.—Fort Worth 2015, pet. filed) ("Following *Villarreal*, we hold that this warrantless, nonconsensual blood draw conducted pursuant to the mandatory-blood-draw and implied-consent provisions of the Texas Transportation Code violated the Fourth

4

Amendment."); *see also Bowyer*, 2015 WL 1120332, at *2 (same); *Chidyausiku v. State*, 457 S.W.3d 627, 631 (Tex. App.—Fort Worth 2015, pet. filed) ("But, as the *McNeely* court held, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant.").

The State's position is predicated on language from the Supreme Court's decision in *Welsh v. Wisconsin*. 466 U.S. 740, 749–50, 104 S. Ct. 2091, 2097–98 (1984). But the State's reliance on *Welsh*, a warrantless-entry-into-the-home case, is misplaced. In *Welsh*, the Court examined whether the need to obtain the blood-alcohol level of a driver who had fled the scene of an accident would constitute an "exigent circumstance." *Id.* at 742, 104 S. Ct. at 2100. The driver in *Welsh* lost control of his car and ended up in a field, causing no injury or damage. A witness who saw the driver walk away told the police that the driver was either inebriated or sick. *Id.* at 742, 104 S. Ct. at 2904. The police went to the driver's house and entered after the driver's stepdaughter answered the door. They found the driver in bed, arrested him, and asked him to take an implied-consent test. He declined. When his license was automatically suspended for refusing the blood test, he challenged that decision. *Id.* at 753–54, 104 S. Ct. at 2099–2100.

The *Welsh* Court held that neither exigent circumstances nor hot pursuit justified the entry into Welsh's home. *Id.* at 748–49, 104 S. Ct. at 2096–97. In reaching this holding, the *Welsh* Court relied heavily on the nature of the alleged

5

offense, which in Wisconsin was a civil forfeiture traffic violation where no imprisonment was possible. *See id.* at 746, 104 S. Ct. at 2095. The *Welsh* Court reasoned that the exigencies were insufficient to overcome the warrant requirement in the context of an arrest for a civil traffic offense. *Id.* Nonetheless, the Court stated that an important factor in determining whether an exigency exists is "the gravity of the underlying offense for which the arrest is being made." *Id.* at 753, 104 S. Ct. at 2099. The *Welsh* Court also clearly explained that the exigency they were referring to was the potential dissipation of blood-alcohol content. *See id.* ("The State attempts to justify the arrest . . . on the need to preserve evidence of the petitioner's blood-alcohol level.") *cf. McNeely*, ---U.S.---, 133 S. Ct. 1552, 1568 ("We hold that in drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant.").

Even though the *Welsh* Court stopped short of drawing a bright line between felonies and nonfelonies, the opinion states that circumstances are more clearly exigent when the offense involved is a "serious crime." *Welsh*, 466 U.S. at 752, 104 S. Ct. at 2099. The reasoning in *Welsh* spawned a number of cases recognizing the proposition that blood-alcohol dissipation *may* create a destruction-of-evidence exigency justifying a warrantless entry into a home. *State v. Komoto*, 40 Wn. App. 200, 213, 697 P.2d 1025, 1033 (1985); *People v. Keltie*, 148 Cal. App.3d 773, 781, 196 Cal. Rptr. 243, 247 (1983); *Stark v. New*

*York State Dep't of Motor Vehicles*, 104 A.D.2d 194, 197, 483 N.Y.S.2d 824 (1984).

Thus, and contrary to the State's position in this case, *Welsh* stands for (and has been widely interpreted and applied as standing for) the proposition that an exigency based on blood-alcohol dissipation can sometimes exist. Therefore, the State's argument in this case—that the Transportation Code's mandatory blood-draw provision's limitation of only authorizing compelled draws in the most serious offenses is a "recognized exigency" unrelated to blood-alcohol dissipation—is dubious. Further, *Welsh* specifically reasoned that the "nature of the underlying offense" is an important factor, but it is not a sufficient factor in and of itself to create exigency. 466 U.S. at 751–52, 104 S. Ct. at 2098–99.

Harkening back to Justice Jackson's concurrence in *McDonald v. United States*, the *Welsh* Court illuminated that when no true emergency is present, the method of law enforcement that statutorily dispenses with a warrant requirement "displays a shocking lack of all sense of proportion." *Id.* (citing *McDonald v. United States*, 335 U.S. 451, 69 S. Ct. 191 (1948) (Jackson, J. concurring)).

Here, even assuming that we are to consider the gravity of the offense of DWI with child passengers as an important factor which might have led Hicks to believe that exigent circumstances required him to obtain a warrantless blood draw, no such circumstances existed in this case. Indeed, Hicks testified at the suppression hearing that he had both the availability and time to obtain a warrant, and the only reason he did not do so is because he was relying on the

7

Transportation Code's mandatory blood-draw provisions. Thus, "[a]pplication of [the *Welsh*] principle to the facts of the present case is relatively straightforward," and to allow a warrantless blood-draw in this case "would be to approve unreasonable police behavior that the principles of the Fourth Amendment will not sanction." *Welsh*, 466 U.S. at 753–54, 104 S. Ct. at 2099–2100.

In short, despite having time to obtain a warrant, the officer in this case relied exclusively on the mandatory provisions of Transportation Code section 724.012(b)(2) for the warrantless blood draw. *See* Tex. Transp. Code Ann. § 724.012(b)(2). And we hold again that this warrantless, nonconsensual blood draw conducted pursuant to the mandatory-blood-draw and implied-consent provisions of the Texas Transportation Code violated the Fourth Amendment. *See Burks*, 754 S.W.3d at 709. We overrule the State's three points.

## IV. CONCLUSION

We hold that the trial court did not err by granting Taylor's motion to suppress the results of the warrantless blood draw, and we affirm the trial court's order.

PER CURIAM

PANEL: MEIER, DAUPHINOT, and WALKER, JJ.

WALKER, J., concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 23, 2015

8