[No. 54914–1.   En Banc.   February 23, 1989.]

THE CITY OF SEATTLE, *Respondent,* v. SCOTT ANDREW GELLEIN, *Petitioner.*

*M. Catherine Miller* of *Seattle–King County Public Defender Association,* for petitioner.

*Douglas N. Jewett, City Attorney,* and *Pamela K. James* and *Douglas B. Whalley, Assistants,* for respondent.

[As amended by order of the Supreme Court June 14, 1989.]

BRACHTENBACH, J.—This case involves the validity of a jury instruction in a prosecution for driving while intoxicated. The Superior Court found the instruction at issue not to be erroneous, and the Court of Appeals affirmed. We granted direct review and reverse.

Defendant Scott A. Gellein was stopped for suspicion of driving while intoxicated (DWI). After failing to satisfactorily perform field sobriety tests, he was arrested and transported to the police station. Gellein underwent a Breathalyzer test, administered by a technician for the

City, that resulted in a reading of 0.16 percent blood alcohol level (BAC). Gellein was cited and released. Following a jury trial, Gellein was convicted of DWI under Seattle Municipal Code (SMC) 11.56.020(a) and (b).

At trial, conflicting evidence was introduced as to both the accuracy and reliability of the Breathalyzer test. The instant dispute focuses on a jury instruction. Gellein objected to jury instruction 5, which stated:

> To convict the defendant of the crime of Driving While Under the Influence, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That the defendant drove a motor vehicle on or about May 18, 1984;
> (2) That (a) at that time he had 0.10 percent or more by weight of alcohol in his blood as shown by chemical analysis of his breath; or (b) at that time the defendant was under the influence of or affected by the use of intoxicating liquor or any drug; and
> (3) That the act occurred in the City of Seattle.
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty. Subsections (a) and (b) of element (2) are alternative modes of committing the offense and only one need be proved. In addition, you do not need to be unanimous as to which method is proved; only unanimous that he is guilty of one of the modes.
> On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

Supplemental Clerk's Papers, at 11. The language of element (2) of this instruction is taken directly from former SMC 11.56.020 (effective Aug. 1984). Gellein challenges the phrase "as shown by chemical analysis of his breath . . ."

The trial judge instructed the jury. The jury's deliberations, however, continued into the evening. The judge presiding at night court received the following note from the jury foreperson:

> Are we to believe that the breathalyzer test is infallible and accurate? So, if the breathalyzer is .16 then the

defendant is guilty because the defendant is driving while he has over .10 percent in his blood stream. Clerk's Papers, at 1. Although the night court judge expressed some concern that the instruction contained "certain ambiguities," he felt unable to supplement or rescind an instruction that had already been given by the presiding trial judge. Thus, the judge responded in a neutral fashion, answering the jury: "You have all the court's instructions on the law." The jury returned a guilty verdict.

On appeal, the Superior Court affirmed. Under RALJ 9.1(a) and (b), the superior court reviews the decision of the municipal court to determine whether that court has committed any errors of law and shall accept express or implied factual determinations supported by substantial evidence. The court held that instruction 5 did not create an irrebuttable presumption, and that the "instruction [was] not conclusive and [did] not shift the burden of proof." Clerk's Papers, at 2. The Court of Appeals also affirmed. *Seattle v. Gellein,* 48 Wn. App. 341, 738 P.2d 1083 (1987).

The resolution of this case turns upon three interrelated, well established principles.

First, whether a jury instruction creates a mandatory presumption is to be judged by the understanding of a reasonable juror. Second, in a criminal case the prosecution has the burden to prove beyond a reasonable doubt all elements of the crime. Third, a jury instruction that creates a mandatory presumption is constitutionally prohibited.

The first principle is an indispensable part of the holding of *Francis v. Franklin,* 471 U.S. 307, 85 L. Ed. 2d 344, 105 S. Ct. 1965 (1985), to wit: "The question, however, is not what the State Supreme Court declares the meaning of the charge to be, but rather what a reasonable juror could have understood the charge as meaning." *Francis,* at 315–16; *see Sandstrom v. Montana,* 442 U.S. 510, 516–17, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979) (state court is not the final authority on the interpretation which a jury could have given the instruction). *See also State v. Shipp,* 93 Wn.2d 510, 514, 610 P.2d 1322 (1980) (use of constitutionally valid

language in a jury instruction may nonetheless create unconstitutional mandatory presumption if reasonable jurors might be misled by instructional language).

The second principle is a holding of *State v. Franco,* 96 Wn.2d 816, 828, 639 P.2d 1320 (1982): "[T]he State always has the burden of proving beyond a reasonable doubt to the jury that the 0.10 percent [Breathalyzer] reading was a correct one." Thus, the State (or in Gellein's case, the City of Seattle) must not only prove 0.10 percent or more by weight of alcohol in defendant's blood, it must also prove beyond a reasonable doubt that the reading is accurate.

In this case, a note from the jury clearly shows that the City was relieved of its burden to prove an essential element of the crime. The jury first asked: "Are we to believe that the breathalyzer test is infallible and accurate?" Clerk's Papers, at 1. *That is exactly what the City must prove beyond a reasonable doubt.* And, as shown below, it was the instructions that removed the issue of Breathalyzer accuracy and reliability from the case and undermined the jury's ultimate function as fact finder. *Cf. County Court of Ulster Cy., N.Y. v. Allen,* 442 U.S. 140, 156, 60 L. Ed. 2d 777, 99 S. Ct. 2213 (1979).

The State correctly points out that the parties presented their arguments to the jury, that the jury heard considerable conflicting testimony from both sides regarding the accuracy and reliability of the Breathalyzer, and that the court instructed the jury on the law. The only *reasonable* conclusion is that the instructions confused and misled the jury. It was the instructions that obviated the requirement of proof beyond a reasonable doubt.

If there is left any doubt about the jury's interpretation of the instruction it is dissolved by the rest of the jury's inquiry:

> So, if the breathalyzer is .16 [the defendant's reading] then the defendant is guilty because the defendant is driving while he has over .10 percent in his blood stream.

Clerk's Papers, at 1. This sentence reveals the jury's reasoning process and discloses an impermissible conclusive

presumption. This brings us to the third principle and the holdings of *Francis v. Franklin, supra,* and *Sandstrom v. Montana, supra.*

The *Francis* Court held that an instruction which could have been interpreted by a reasonable juror as a mandatory presumption violated fundamental due process requirements. *Francis,* at 318; *see Sandstrom,* at 524. A mandatory presumption requires that the jury find the existence of the elemental fact if the State proves certain predicate facts. In contrast, a permissive inference suggests to the jury a possible conclusion to be drawn if the State proves certain predicate facts, but does not require the jury to draw the conclusion. *Francis,* at 314; *accord, State v. Brayman,* 110 Wn.2d 183, 189, 751 P.2d 294 (1988).

In this case, the second sentence of the jury's note reasons that if the Breathalyzer was 0.16, then the defendant *must* have been driving with more than 0.10 percent or more alcohol in his bloodstream. It is difficult to imagine how a lay person could better articulate a conclusive presumption. A conclusive presumption that the 0.16 Breathalyzer reading, the predicate fact, proved that the defendant had an excessive blood alcohol level, the ultimate fact. Thus, the jury was *required* to find the ultimate fact based upon the existence of certain predicate facts. This is a conclusive presumption, not a permissive inference suggesting a possible conclusion for the jury to reach.

How could the jury have embarked upon this constitutionally impermissible reasoning process? Simple. The court instructed the jury that the City met its burden of proving excessive blood alcohol by "showing" chemical analysis of the breath. The proof was in the reading itself. Hence the City's entire burden was to prove a reading of 0.10 percent or more. Having "shown" the Breathalyzer reading, its burden to prove excessive blood alcohol levels was satisfied when the court instructed the jury that this element was proved "as shown by chemical analysis of his breath."

In the usual case we would have to speculate, per *Francis,* what a reasonable jury *could* have understood the instruction to mean. *Francis,* at 316. Here we *know* what the jury understood. We *know* that the jury, having heard conflicting testimony about the accuracy of the Breathalyzer, is led to believe, by the instruction, that the machine is "infallible and accurate." And since no other instructions addressed this issue, the instructions as a whole could not have cured this defect. There can be no doubt that the infallible reading itself led the jury to conclusively presume excessive blood alcohol levels and convict the defendant. The spike was driven home when the judge confirmed the jury's analysis by telling them "you have all the court's instructions on the law."

Therefore, we hold that instruction 5 was susceptible to misinterpretation by a reasonable jury as an unconstitutional mandatory presumption. On this view, the instruction was erroneous and violated Gellein's right to due process of law.

The Court of Appeals is reversed and the case is remanded for further proceedings consistent with this opinion.

UTTER, DORE, PEARSON, ANDERSEN, DURHAM, and SMITH, JJ., concur.

DOLLIVER, J. (dissenting)—The issue is whether jury instruction 5 was susceptible to misinterpretation by a reasonable juror as an unconstitutional irrebuttable presumption. The objective evidence shows such a misinterpretation is not reasonable. Therefore, I dissent.

Instruction 5 reads as follows:

> To convict the defendant of the crime of Driving While Under the Influence, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That the defendant drove a motor vehicle on or about May 18, 1984;
> (2) That (a) at that time he had 0.10 percent or more by weight of alcohol in his blood as shown by chemical

analysis of his breath; or (b) at that time the defendant was under the influence of or affected by the use of intoxicating liquor or any drug; and

(3) That the act occurred in The City of Seattle.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty. Subsections (a) and (b) of element (2) are alternative modes of committing the offense and only one need be proved. In addition, you do not need to be unanimous as to which method is proved; only unanimous that he is guilty of one of the modes.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

The entire argument of defendant rests on the words "as shown by chemical analysis of his breath" contained in instruction 5. He asserts this language is susceptible to interpretation as a mandatory presumption, thus violating his constitutional rights of due process. Even though this phrase, taken from SMC 11.56.020, is identical to statutory language found constitutional in *State v. Franco,* 96 Wn.2d 816, 639 P.2d 1320 (1982), defendant urges it be held invalid as instructional language. In support of this position defendant calls attention to both Washington and United States Supreme Court cases, most particularly *State v. Shipp,* 93 Wn.2d 510, 610 P.2d 1322 (1980) and *Francis v. Franklin,* 471 U.S. 307, 85 L. Ed. 2d 344, 105 S. Ct. 1965 (1985). The problem, as seen from the perspective of the defendant, is that if a reading of 0.10 or more is shown by the Breathalyzer—the predicate fact—there is then a conclusive and irrebuttable presumption the blood alcohol level was at 0.10 or above. Defendant correctly states this would be a violation of due process as illustrated in both *State v. Shipp, supra,* and *Francis v. Franklin, supra.*

In all relevant particulars the language of instruction 5 was found to be proper in *State v. Franco, supra.* As the court stated, "[t]he statute does not presume, it defines." *Franco,* at 823. In approving the language of the statute

contained in the instruction, however, the *Franco* court did not directly face or discuss the instructional issue raised in this case.

The real question is whether a reasonable jury could misinterpret the instruction as creating an irrebuttable presumption whereby the mere introduction of evidence by the State that the Breathalyzer read 0.16 percent created a presumption of a blood alcohol reading of 0.10 percent or more by weight of alcohol. That the elements of the case had to be proved beyond a reasonable doubt is clear from the instructions. "[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten,* 414 U.S. 141, 146–47, 38 L. Ed. 2d 368, 94 S. Ct. 396 (1973); *see State v. Foster,* 91 Wn.2d 466, 589 P.2d 789 (1979). As the entire instruction indicates, the blood alcohol content, as shown by the chemical analysis, had to be proved beyond a reasonable doubt. Percentage of blood alcohol must be shown by some form of chemical analysis, including blood samples or Breathalyzer tests. The phrase "as shown by chemical analysis" does not create a presumption, rather it provides the State must prove the reading of a 0.10 percent blood alcohol was accurate and reliable beyond a reasonable doubt.

While there may have been some confusion on the part of the jury, it surely was not that it was to find an irrebuttable presumption of 0.10 percent or more of blood alcohol simply from the fact of the reading of the Breathalyzer. Far from it. There was extensive testimony on the part of both prosecution and defense witnesses as to the validity of the Breathalyzer and the Breathalyzer sample. As this court has previously noted:

> The breath sample must be analyzed, the machine must be proved to be in proper working order beyond a reasonable doubt by the State, the officer who gives the test must be certified and must be proved to be competent at trial. The ampules must be proved beyond a reasonable doubt at trial to have been properly tested and the State

always has the burden of proving beyond a reasonable doubt to the jury that the 0.10 percent reading was a correct one. *State v. Franco, supra* at 828.

All of these matters were contested at trial as the State attempted to meet its burden of proof as to the validity of the chemical analysis of the breath sample. The defense was in no way hampered or precluded from presenting and arguing its theory of the case, part of which included the invalidity of the Breathalyzer and the Breathalyzer reading. The City had the burden of proving beyond a reasonable doubt that the chemical analysis of defendant's breath was correct. *State v. Baker,* 56 Wn.2d 846, 355 P.2d 806 (1960). There is no claim by the defendant the burden of proof was not met, only that the jury was confused as to whether the reading on the Breathalyzer in and of itself created a presumption of 0.10 percent blood alcohol.

I do not agree the jury was so confused. The issue of the accuracy and the fallibility of the Breathalyzer was a major issue in the defendant's case. A fair review of the record can leave no doubt that whether the reading of 0.16 was accurate and whether it accurately measured the blood alcohol of defendant was a major issue in the case of both the State and the defendant. Indeed, a substantial amount of the testimony in the case revolved around an expert witness of the defendant who attempted to demonstrate the fallibility of the Breathalyzer.

The issue is not whether the jury was confused, but whether the jury instructions, taken as a whole, were the objective source of its confusion. The majority assumes that because the jury claimed to be confused the jury instruction was the source of this confusion. Contrary to the majority's assertion, however, we do not know the jury misunderstood the instruction.

It is unfounded speculation to conclude the jury in this case, a reasonable jury, misinterpreted the instruction. With more logic, it could be argued any confusion resulted from a belief the judge could decide a pivotal factual issue

which the jury was required to decide, upon which testimony had been taken, about which a vigorous argument had ensued at trial, and which the jury had been unequivocally instructed to decide.

The first sentence of instruction 5 expressly states "each of the following elements of the crime must be proved beyond a reasonable doubt . . ." Necessarily, element (2)(a), "[t]hat . . . at that time he had 0.10 percent or more by weight of alcohol in his blood as shown by chemical analysis of his breath" must be proved beyond a reasonable doubt. Defendant's interpretation of this instruction cannot be arrived at without ignoring the first sentence of the instruction. Reasonable jurors would not interpret instructions by ignoring parts of the instruction and then claim confusion. If the court allows such a claim, few instructions would be free from this kind of attack.

The objective evidence shows instruction 5 was not erroneous. I would affirm the courts below.

CALLOW, C.J., concurs with DOLLIVER, J.

After modification, further reconsideration denied June 14, 1989.