**In re John F. GLEASON,**
**a single man, Debtor.**

**FARMERS INSURANCE COMPANY,**
**Plaintiff,**

**v.**

**John F. GLEASON, Defendant.**

**Bankruptcy No. 90–33642.**
**Adv. No. 91–30182.**

United States Bankruptcy Court,
W.D. Washington.

March 30, 1992.

Stanley J. Rumbaugh, Rumbaugh & Rideout, Tacoma, Wash., for plaintiff.

Noel P. Shillito, Shillito & Giske, Tacoma, Wash.

## DECISION

PHILIP H. BRANDT, Bankruptcy Judge.

Debtor John F. Gleason, Jr. filed for relief under Chapter 7 of the Bankruptcy Code [1] on 3 October 1990.

Farmers Insurance Company filed a Complaint alleging that it had paid insurance claims in the amount of $66,075.78 resulting from Gleason's car collision with one Mary Jo McAllister on 16 June 1989, seeking a determination that Gleason's debt to it is nondischargeable under § 523(a)(9).

## I.  MOTION TO DISMISS

The Complaint was filed 14 January 1991, and a Summons and Notice of Pre-Trial Conference issued 15 January 1991. Gleason verified his Answer, filed on 12 April 1991, denying the material allegations of the Complaint, and asserting affirmative defenses, including "insufficient service of process." On 22 May 1991, Gleason filed his Motion to Dismiss under Fed. R.Bankr.P. 7004(a) and Fed.R.Civ.P. 4(c)(2)(A), asserting that Farmers had never served the Summons or Complaint on Gleason, and that the 120 day period for doing so had expired.

The motion was argued at the beginning of trial, and I denied it, finding (marginal) good cause in Farmers' counsel's reliance upon the stamped certificate of mailing stamped on the Summons and Notice, dated

**1.** 11 U.S.C.: references to "§", "Section" or to "Chapter", without more, are to the Bankruptcy Code.

"1–15–91", and signed by a deputy clerk. The Notice is addressed "To the above named defendant:". Additionally, since the case could apparently be refiled if dismissed, the interests of economy, both for the parties and the Court, were served by denying the motion.

## II.  PROOF

In his opening statement, counsel withdrew Farmers' Request for Entry of Judgment, submitting that the sole issue for determination was whether Gleason was intoxicated under the laws of the State of Washington at the time of the accident. Only the issue of nondischargeability was tried.

For its proof, Farmers submitted an affidavit of counsel, admitted by stipulation, which included a copy of the docket in *State of Washington v. John F. Gleason, Jr.,* No. 891615 in Pierce County District Court No. 2, Gig Harbor, Washington. That docket reflects that Mr. Gleason was charged with driving while intoxicated under RCW 46.61.502 on 16 June 1989, and that on 15 August 1989, the Court approved a plea agreement whereby, if Mr. Gleason complied with various conditions including participation in an alcohol program and having no moving violations or alcohol-related offenses for a year, the charge would be reduced to negligent driving, and Gleason would enter a plea of guilty. The docket contains reports of compliance with the alcohol counseling requirement, but does not indicate compliance with the other conditions, or that charge has actually been reduced and pleaded to.

Farmers' only witness was Michael J. O'Connor, a Trooper with the Washington State Patrol. At 10:49 a.m. on 16 June 1989, Trooper O'Connor responded to a radio call and arrived at the site of a two-car accident on the Elgin–Clifford Road, approximately three miles outside of Purdy, Washington. Personnel from Pierce County Fire District 16, including Emergency

Medical Technicians, were already on the scene. Three individuals had apparently been involved in the accident: two who were seated in a vehicle, and the third, Gleason, was lying on the ground next to that vehicle. Trooper O'Connor testified that Gleason was uncooperative, declining to give his name, and that he identified Gleason by means of his driver's license and the fact that the other vehicle, the keys to which were in Gleason's pocket, was registered to him. Trooper O'Connor also smelled a strong odor of alcohol on Gleason's breath. In response to an inquiry about seatbelts, Gleason gestured, indicating a shoulder belt over his left shoulder, and stated "he said he didn't see my blinkers." Because Gleason was being treated by the EMTs, and about to be taken by ambulance to Tacoma General Hospital, Trooper O'Connor did not administer any field sobriety tests. Before Gleason was taken to the hospital, Trooper O'Connor advised him that he was under arrest for driving while intoxicated.

Trooper O'Connor completed his investigation at the scene, interviewing the occupants of the other vehicle, and arrived at the hospital at approximately 12:30. He saw Gleason in the Emergency Room, where he advised Gleason of his Miranda rights. Gleason wanted counsel and contacted his attorney via telephone. Gleason spoke to his attorney for approximately eight minutes, after which he gave the Trooper the telephone. Gleason's counsel advised Trooper O'Connor that he had told his client to submit to a breath test, but not to take field sobriety tests or answer any "non-informational" questions. When Gleason was released by the hospital, Trooper O'Connor transported Gleason to Pierce County Jail, where he administered a breath test on the BAC Verifier Data-Master, obtaining readings of .07 at 2:12 p.m. and .08 at 2:14 p.m. (roughly three hours and forty-five minutes after the accident). Trooper O'Connor then issued the citation to Mr. Gleason. The Trooper's card certifying his training as an operator on that machine was admitted, as was, over objection, the DataMaster "ticket" showing the results.

On cross examination, Trooper O'Connor acknowledged that he was not trained to maintain or certify the accuracy of the DataMaster or its solutions, that he had not observed Gleason driving, and that Gleason had denied driving.

Plaintiff and Defendant both rested.

## III. DISCUSSION

A. *Standard of Proof:* Gleason concedes the evidence is to be measured by a preponderance standard.

B. *Washington's DWI statute:* RCW 46.61.502 provides:

A person is guilty of driving while under the influence of intoxicating liquor or any drug if the person drives a vehicle within this state while:

(1) The person has 0.10 grams or more of alcohol per two hundred ten liters of breath, as shown by analysis of the person's breath made under RCW 46.61.506; or

(2) The person has 0.10 percent or more by weight of alcohol in the person's blood as shown by analysis of the person's blood made under RCW 46.61.506; or

(3) The person is under the influence of or affected by intoxicating liquor or any drug; or

(4) The person is under the combined influence of or affected by intoxicating liquor and any drug.

The fact that any person charged with a violation of this section is or has been entitled to use such drug under the laws of this state shall not constitute a defense against any charge of violating this section.

The Washington Supreme Court, in *State v. Brayman*, 110 Wash.2d 183, 751 P.2d 294 (1988), upheld the constitutionality of this multi-pronged definition of driving while intoxicated, and its statutory presumptions.

RCW 46.61.506 provides, in pertinent part:

(3) Analysis of the person's blood or breath to be considered valid under the provisions of this section or RCW 46.61.-502 or 46.61.504 shall have been per-

formed according to methods approved by the state toxicologist and by an individual possessing a valid permit issued by the state toxicologist for this purpose. The state toxicologist is directed to approve satisfactory techniques or methods, to supervise the examination of individuals to ascertain their qualifications and competence to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the state toxicologist.

In prosecutions for driving while intoxicated, it is the Washington Supreme Court's:

> ... long-standing requirement that when relying on results of machine tests for breath alcohol, the State must establish that the machine was in proper working order, that if chemicals were used in testing they were correct and correctly used, that the operator was qualified and performed the test correctly, and the results are accurate. This foundational requirement was first set out in *State v. Baker*, 56 Wn.2d 846, 355 P.2d 806 (1960). *State v. Straka*, 116 Wn.2d 859, 874, 810 P.2d 888 (1991).

The Supreme Court, in *Straka*, approved the DataMaster and the State Toxicologist's protocols for certifying the maintenance of the machines and solutions used in them.

Washington's Criminal Rules for Courts of Limited Jurisdiction provide a method whereby the persons responsible for maintenance of breath-testing machines and the solutions used by those machines file certificates with the pertinent courts to establish the maintenance of the machines and certify the chemical solutions used. Wash.Cr. R.L.J. 6.13(c). Absent a timely pretrial demand for testimony of the certifying personnel, DataMaster results are admissible on the basis of such certificates.

The results of Trooper O'Connor's testing of Gleason would have been inadmissible in a state court prosecution of Gleason, absent the appropriate certificates or testimony to provide the foundation required by *Straka*. Farmers offered neither, nor any

evidence regarding the rate of "burnoff" of alcohol in the bloodstream or breath over time. Without foundational evidence establishing proper machine maintenance and chemical solutions, and the "burn off" rate, the DataMaster results have no probative value, and are therefore irrelevant under either Washington or Federal rules. Wash. R.Evid. 401, 402; Fed.R.Evid. 401, 402.

C. *Nondischargeability:* Gleason's petition for relief was filed before the effective date of the 1990 version of § 523(a)(9), and therefore it is governed by the 1984 version, enacted as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984.[2] In that form, the section provided:

> A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
>
> . . . .
>
> (9) to any entity, to the extent that such debt arises from a judgment or consent decree entered in a court of record against the debtor wherein liability was incurred by such debtor as a result of the debtor's operation of a motor vehicle while legally intoxicated under the laws or regulations of any jurisdiction within the United States or its territories wherein such motor vehicle was operated and within which such liability was incurred[.]

The Ninth Circuit, in *In re Hudson*, 859 F.2d 1418 (1988), held that a pre-petition judgment is not required.

The section's operative language, "... wherein liability was incurred by such debtor as a result of debtor's operation of a motor vehicle *while legally intoxicated under the laws or regulations* of any jurisdiction ...", requires, for nondischargeability, that I find Gleason incurred liability to Farmers as a result of driving while intoxicated under the laws of Washington. *Whitson v. Middleton*, 898 F.2d 950 (4th Cir.1990).

▮▮▮▮ From the evidence admissible in state court, I find that Gleason was driving. While Gleason questions Trooper

---

**2.** Pub.L. No. 98–353, 98 Stat. 353 (1984).

O'Connor's inferences from his statement and conduct in response to the seatbelt inquiry, he offered no rebuttal evidence. A confession, without more, is insufficient to establish elements of driving while intoxicated under Washington law, *State v. Hamrick*, 19 Wash.App. 417, 576 P.2d 912 (1978), but independent circumstantial evidence, such as the fact that the car was registered to Gleason and its keys were in his pocket, remedies that defect. *Bremerton v. Corbett*, 42 Wash.App. 45, 708 P.2d 408 (1985). I also find, from the Trooper's testimony about Gleason's demeanor and the odor on his breath, that Gleason had been drinking.

However, I cannot find that a preponderance of the evidence establishes Gleason was driving while intoxicated under Washington law, either from his blood or breath alcohol content, or because he was under the influence of or affected by alcohol while driving. Trooper O'Connor, having not seen Gleason's driving, expressed no opinion, and there was no other evidence.

Nor has Farmers proved any connection between its claimed loss and the collision at which Mr. Gleason was arrested. The entire record on that point is Farmers' counsel's unsworn allegation in its Complaint and counsel's representations. While it is no doubt proper for the plaintiff to ask the Court only to determine nondischargeability, and to allow some other tribunal to determine the amount of the debt, there must be proof that whatever debt there is results from the debtor's unlawful operation of a motor vehicle while intoxicated.

These are my findings. Fed.R.Bankr.P. 7052.

## IV. CONCLUSION

Plaintiff has shown neither that Gleason's driving was unlawful under the laws of Washington because he was intoxicated, nor that the debt it claims arose from such driving by Gleason. Gleason's debt to Farmers, if he has any, is dischargeable.